

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION 18  2591 |
| Plaintiff, | : | |
| v. | : | No. 18-CV-_____ |
| SEVENTY-FIVE THOUSAND SEVEN HUNDRED AND TWENTY DOLLARS IN UNITED STATES CURRENCY ($75,720.00), | : : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Maria M. Carrillo, Assistant United States Attorney, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, for its complaint alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States of America Seventy-Five Thousand Seven Hundred and Twenty Dollars ($75,720.00) in United States Currency ("Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, all proceeds traceable to such exchanges, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title II.

X Warrant issued on 6/20/18 by Rob Fehrle X

- 1 -

## JURISDICTION AND VENUE

2. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Currency. This court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

3. This Court has *in rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) and 28 U.S.C. § 1395(b), because a civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.

## THE DEFENDANT IN REM

5. The Defendant Currency is Seventy-Five Thousand Seven Hundred and Twenty Dollars ($75,720.00) in United States Currency that law enforcement officials seized on or about October 25, 2016. The Defendant Currency currently is in the custody of U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") and will remain within the jurisdiction of this Court during the pendency of this action.

## BASIS FOR FORFEITURE

6. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; proceeds traceable to such an

exchange; or money used and intended to be used to facilitate a violation of the Controlled Substance Act.

## FACTS

### The Seizure of the Defendant Currency

7. On October 25, 2016, members of the HSI Philadelphia Airport Investigations group received notification from the Transportation Security Administration ("TSA") regarding a passenger attempting to proceed through security screening at the Philadelphia International Airport, Philadelphia, Pennsylvania, within the Eastern District of Pennsylvania. The carry-on bag of the passenger, S.R., contained concealed bulk currency that was discovered when the bag was x-rayed. According to TSA, the currency was concealed in the bottom lining of S.R.'s carry-on bag. After removing S.R.'s other items from the bag, law enforcement personnel determined that the bottom lining of the bag had been glued shut. HSI Philadelphia Airport Special Agents responded, along with an officer from the Philadelphia Police Department, and interviewed S.R.

8. S.R. agreed to speak with HSI agents regarding her travel plans and the origin of the currency in her carry-on bag. S.R. had been scheduled to fly from Philadelphia, Pennsylvania to San Juan, Puerto Rico on American Airlines flight 741.

9. When asked to explain why the bottom of her carry-on bag was glued shut, S.R. stated that the bag was not hers, and that she found the bag on the corner of 4th and Indiana Streets in Philadelphia approximately a couple of weeks prior to her flight and had been using the bag since. She also said that she was unaware of the money in the bag. S.R. stated that she does not work and that she was traveling to Puerto Rico to give her son up for adoption to a

friend. At the end of the interview, S.R. signed an abandonment form for the bag and currency. S.R. was able to catch her flight.

10. Special Agents from the HSI Philadelphia Airport group asked a certified U.S. Customs and Border Protection ("CBP") K-9 dog, "Dasha," to perform a "sniff" of the seized currency for narcotics. Dasha signaled, through a distinctive set of behavior, to the bag with the currency, indicating that she detected a controlled substance. The currency was subsequently seized by HSI.

11. Dasha received the U.S. Customs and Border Protection Detection Canine Team Certification ("Certification") on September 13, 2016. She was tested for the Certification following the completion of approximately 14-16 weeks of training conducted by experienced K-9 trainers at a facility operated and managed by CBP. Dasha's K-9's handler, Canine Enforcement Officer Mark Gillespie, was trained together with Dasha for approximately seven weeks of this training period. Dasha's training included the detection of odors for five controlled substances, specifically cocaine and its derivatives, marijuana and its derivatives, heroin and its derivatives, methamphetamine and its derivatives, and ecstasy. Dasha was able to detect the presence of these controlled substances as a result of the intense training she received which included being involved in numerous searches for the five above listed controlled substances.

12. The Certification is a comprehensive exam designed to measure the ability of the dog and handler in searching for, and indicating the presence of, concealed humans and controlled substances. The certification is administered in different environments with a variety of distractions and is designed to duplicate actual field conditions that may be encountered by the team.

13. Since her Certification, Dasha has received daily training from Officer Gillespie on the detection of the five odors. She has also been graded approximately every 45 days by an experienced CBP supervisory K-9 Officer who is not Officer Gillespie, and has scored high grades on these performances. Dasha received Certification again in May 2017 and May 2018, and she has never failed a Certification test. Dasha has continued to receive, comply with, and meet all training requirements for CBP narcotics-detection canines, and is considered to be a reliable K-9 dog.

14. A currency count was performed on the Defendant Currency and the total of $75,720.00 was comprised of 3,575 individual bills, specifically, 89 $100 bills; 28 $50 bills; 3,086 $20 bills; 368 $10 bills; and 4 $5 bills. Each bill weighs one gram, and in total, the Defendant Currency weighed 7.88 pounds.

15. During an investigation following the seizure, HSI agents determined that S.R. had booked her plane ticket one-way from Philadelphia to Puerto Rico on or about October 24, 2016, within approximately 24-48 hours of her scheduled departure.

16. Puerto Rico is a known destination for the smuggling of bulk cash drug proceeds. Couriers of bulk cash drug proceeds will often conceal the smuggled cash in their luggage and make flight reservations near in time to the flight they take when smuggling the cash in order to avoid detection by law enforcement. Large amounts of concealed U.S. Currency comprised of many lower denominations of bills is consistent with the smuggling of bulk cash drug proceeds.

17. On November 2, 2016, the HSI Philadelphia Airport group received a telephone call from Jose Bonilla, the claimant. Bonilla provided statements regarding the Defendant Currency and the bag that are inconsistent with S.R.'s statements and that are

inconsistent with the records that Bonilla later produced. Bonilla stated that S.R. is his sister, that the Defendant Currency was his, and that he had been saving it for a while. He also stated that he did not put the money in the bank because he was skeptical of banks because he is from Puerto Rico, where he said banks are not trustworthy. Bonilla was advised that he could come in to HSI to speak to members of the HSI group.

18. On November 8, 2016, Bonilla voluntarily met HSI Special Agents Harry Ubele and Greg Milligan to discuss the Defendant Currency and its seizure. Bonilla stated that he had been saving the $75,720.00 since he arrived in the United States from Puerto Rico in November 2006 and had not put the money in a bank because he did not trust banks. However, the agents became aware that Bonilla did use bank accounts because he (Bonilla) provided bank statements to the agents for accounts that belonged to him in an attempt to show that the Defendant Currency was his. The bank statements did not reveal any large amounts of cash withdrawals or deposits consistent with the amount of the Defendant Currency.

19. When Special Agents Ubele and Milligan informed Bonilla that the bank statements did not reveal cash withdrawals or deposits consistent with the amount of the Defendant Currency, Bonilla added that he performed odd jobs and that is how he acquired and saved the Defendant Currency. However, upon further questioning, he could not provide names or additional identifying information as to the odd jobs he stated that he had been performing.

20. Bonilla stated that he purchased the bag approximately a year before the seizure, but did not say where he kept the money before placing it in the bag. Bonilla could not explain why the lining of the bag, where the currency had been secreted, had been glued shut.

21. Bonilla could not explain why S.R. said she found the bag on the corner of 4th and Indiana Streets, nor could he explain how S.R. retrieved the bag from Bonilla's home without his permission.

22. During the interview, Special Ubele and Milligan presented Bonilla with the photograph of a different bag that is unrelated to this investigation. Bonilla identified this unrelated bag as his.

## CLAIM FOR FORFEITURE

23. By reasons of the foregoing, there is reason to believe that the Defendant Currency constitutes money furnished or intended to be furnished in exchange for a controlled substance; proceeds traceable to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act, and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the plaintiff, United States of America, requests:

1. The Defendant Currency be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

2. The Court, for the reasons set forth herein, adjudge and decree that the Defendant Currency be forfeited to the United States of America and disposed of in accordance with existing laws, together with costs, and for such other relief as this Court deems proper and just.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and Victim/Witness Unit

MARIA M. CARRILLO
Assistant United States Attorney

Date: June 20, 2018.

## **V E R I F I C A T I O N**

HARRY UBELE, being of legal age, verifies and, pursuant to 28 U.S.C. § 1746(2), declares and states as follows:

1. I am a Homeland Security Investigations Special Agent who is assigned to the investigation in this case.

2. I have reviewed the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

3. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2018 at Philadelphia, Pennsylvania

_____
HARRY UBELE
Special Agent
Department of Homeland Security,
Homeland Security Investigations



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| SEIZURE OF SEVENTY FIVE THOUSAND SEVEN HUNDRED AND TWENTY DOLLARS ($75,720.00) IN UNITED STATES CURRENCY | : : : 18-CV-_____ |
| Defendant. | : |

18 2591

## DECLARATION OF HSI SPECIAL AGENT HARRY UBELE
## IN SUPPORT OF CIVIL FORFEITURE COMPLAINT *IN REM*

HARRY UBELE, being of legal age, pursuant to 28 U.S.C. § 1746(2), declares and states the following:

1. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code and other related offenses. I have been employed as a Special Agent by the U.S. Customs Service and subsequently the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") since January 2003. Since becoming a Special Agent, I have participated in numerous investigations into suspected international controlled substances trafficking and money laundering. I have executed numerous seizure, search, and arrest warrants. I am currently assigned to the Philadelphia Special Agent in Charge HSI Office, Airport Investigations Group. In addition to my

investigative experience, I have successfully completed the Criminal Investigator Training Program, United States Customs Academy Special Agent Training. I have earned a Bachelor's degree in Criminal Justice from University of North Florida. I am the HSI Special Agent that is assigned to the investigation in this case.

2. The facts set forth in this Declaration summarize my investigation in this case, and include observations, along with review of reports and observations of other law enforcement officers involved in the investigation. This Declaration, however, does not detail the entire scope of the investigation or all statements made by the parties.

3. I submit this application in support of the government's civil forfeiture complaint *in rem*. The facts set forth in this Declaration summarize my investigation in this case, and include observations, along with review of reports and observations of other law enforcement officers involved in the investigation. This Declaration, however, does not detail the entire scope of the investigation or all statements made by the parties.

**THE SEIZURE OF THE DEFENDANT CURRENCY**

4. On October 25, 2016, members of the HSI Philadelphia Airport Investigations group received notification from the Transportation Security Administration ("TSA") regarding a passenger attempting to proceed through security screening at the Philadelphia International Airport, located in the Eastern District of Pennsylvania, Philadelphia, Pennsylvania. Artfully concealed bulk currency was discovered by TSA when the passenger's carry-on bag was x-rayed. HSI Philadelphia Airport Special Agents responded, along with an officer from the Philadelphia Police Department, and interviewed the passenger, S.R. According to TSA, the currency was concealed in the bottom lining of S.R.'s carry-on bag. After removing

SR's other items from the bag, law enforcement personnel determined that the bottom lining of the bag had been glued shut.

5. S.R. had been scheduled to fly from Philadelphia, Pennsylvania to San Juan, Puerto Rico on American Airlines flight 741. S.R. agreed to speak with HSI agents regarding her travel plans and the origin of the currency in her carry-on bag.

6. When asked to explain why the bottom of her carry-on bag was glued shut, SR stated that the bag was not hers, and that she found the bag on the corner of 4th and Indiana Streets in Philadelphia a couple of weeks prior to her flight and since that time she had been using the bag. She also said that she was unaware of the money in the bag. S.R. stated that she does not work and that she was traveling to Puerto Rico to give her son up for adoption to a friend. At the end of the interview, S.R. signed an abandonment form for the bag and currency. S.R. did make her flight.

7. Special Agents from the HSI Philadelphia Airport group asked a certified U.S. Customs and Border Protection ("CBP") K-9, "Dasha," to perform a "sniff" of the seized currency for narcotics. Dasha signaled, through a distinctive set of behavior, to the bag with the currency, indicating that she detected a controlled substance. The currency was subsequently seized by HSI.

8. Dasha received the U.S. Customs and Border Protection Detection Canine Team Certification ("Certification") on September 13, 2016. She was tested for the Certification following the completion of approximately 14-16 weeks of training conducted by experienced certified K-9 trainers at a facility operated and managed by CBP. Dasha's K-9's handler, Canine Enforcement Officer Mark Gillespie, was trained together with Dasha for approximately seven weeks of this training period. Dasha's training included the detection of odors for five controlled

substances, specifically cocaine and its derivatives, marijuana and its derivatives, heroin and its derivatives, methamphetamine and its derivatives, and ecstasy. Dasha was able to detect the presence of these controlled substances as a result of the intense training she received which included being involved in numerous searches for the five above listed controlled substances.

9. The Certification is a comprehensive exam designed to measure the ability of the dog and handler in searching for, and indicating the presence of, concealed humans and controlled substances. The certification is administered in different environments with a variety of distractions and is designed to duplicate actual field conditions that may be encountered by the team.

10. Since her Certification, Dasha has received daily training from Officer Gillespie on the detection of the five odors. She has also been graded approximately every 45 days by an experienced CBP supervisory K-9 Officer who is not Officer Gillespie, and has scored high grades on these performances. Dasha received Certification again in May 2017 and May 2018, and she has never failed a Certification test. Dasha has continued to receive, comply with, and meet all training requirements for CBP narcotics-detection canines, and is considered to be a reliable K-9 dog.

11. A currency count of the seized currency was performed. The count revealed a total currency count of $75,720.00 that was comprised of 3,575 individual bills, specifically, 89 $100 bills; 28 $50 bills; 3,086 $20 bills; 368 $10 bills; and 4 $5 bills. Each bill weighs one gram, and in total, the seized currency weighed 7.88 pounds.

12. During an investigation following the seizure, I determined that S.R. had booked her plane ticket one-way from Philadelphia to Puerto Rico on or about October 24, 2016, approximately within 24-48 hours of her scheduled departure

13. Based on my training and experience, I know that Puerto Rico is a known destination for the smuggling of bulk cash drug proceeds. Further, based on my training and experience, I know that couriers of bulk cash drug proceeds will often conceal the smuggled cash in their luggage and make flight reservations near in time to the flight they take when smuggling the cash in order to avoid detection by law enforcement. Further, based on my training and experience, I know that large amounts of concealed U.S. Currency comprised of many lower denominations of bills is consistent with the smuggling of bulk cash drug proceeds.

14. On November 2, 2016, the HSI Philadelphia Airport group received a telephone call from Jose Bonilla, the claimant. Bonilla provided statements regarding the Defendant Currency and the bag that are inconsistent with S.R.'s statements and that are inconsistent with the records that Bonilla later produced. Bonilla stated that S.R. is his sister, that the seized currency was his, and that he had been saving it for a while. He also stated that he did not put the money in the bank because he was skeptical of banks because he is from Puerto Rico, where he said banks are not trustworthy. Bonilla was advised that he could come in to HSI to speak to members of the HSI group.

15. On November 8, 2016, Bonilla voluntarily met with HSI Special Agent Greg Milligan and me to discuss the currency and its seizure. Bonilla stated that he had been saving the $75,720.00 since he arrived in the United States from Puerto Rico in November 2006 and had not put the money in a bank because he did not trust banks. However, Special Agent Milligan and I became aware that Bonilla did use bank accounts because Bonilla showed us bank statements for accounts in his name to support his claim to the seized currency. The bank statements did not reveal any large amounts of cash withdrawals or deposits consistent with the amount of the seized currency.

16. When Special Agent Milligan and I informed Bonilla that the bank statements did not reveal cash withdrawals or deposits consistent with the amount of the seized currency, Bonilla added that he performed odd jobs and that is how he acquired and saved the seized currency. However, upon further questioning, he could not provide names or additional identifying information as to the odd jobs he claimed that he had been performing.

17. Bonilla stated that he purchased the bag approximately a year before the seizure, but did not say where he kept the money before placing it in the bag. Bonilla could not explain why the lining of the bag, where the currency had been secreted, had been glued shut.

18. Bonilla could not explain why S.R. said she found the bag on the corner of 4th and Indiana Streets, nor could he explain how S.R. retrieved the bag from Bonilla's home without his permission.

19. During the interview, HSI Special Agent Milligan and I presented Bonilla with a photograph of a different bag that is unrelated to this investigation. Bonilla identified this unrelated bag as his.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2018.

HARRY UBELE
Special Agent
Homeland Security Investigations

- 6 -

JS 44 (Rev 06/17)

# CIVIL COVER SHEET



18 CV 2591

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Maria M Carrillo
U S Attorney's Office for the Eastern District of Pennsylvania,
615 Chestnut St, Suite 1250, Philadelphia, PA 19106

## DEFENDANTS
Seventy Five Thousand Seven Hundred and Twenty Dollars in U S Currency

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*
Michael T van der Veen
1219 Spruce Street
Philadelphia, PA 19107

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U S Government Plaintiff
☐ 2 U S Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
21 U S C 881(a)(6)
Brief description of cause
Civil asset forfeiture for drug-related seizure of property

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE Robert F Kelly
DOCKET NUMBER 17-MC-160

DATE 06/20/2018
SIGNATURE OF ATTORNEY OF RECORD
*Maria M Carrillo*

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18 - 2591**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476

Address of Defendant: ___

Place of Accident, Incident or Transaction: Philadelphia International Airport

---

**RELATED CASE, IF ANY:**

Case Number: 17-MC-160    Judge: Robert F. Kelly    Date Terminated: ___

Civil cases are deemed related when Yes is answered to any of the following questions.

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/20/2018    *Maria M. Carrillo* (signature)
*Attorney-at-Law / Pro Se Plaintiff*    Attorney I D # *(if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify)* Civil Asset Forfeiture under 21 USC 881(a)

**B.  Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)* ___
7. ☐ Products Liability
8. ☐ Products Liability  Asbestos
9. ☐ All other Diversity Cases
    *(Please specify)* ___

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Maria M. Carrillo, counsel of record or pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

☑ Relief other than monetary damages is sought.

DATE: 06/20/2018    *Maria M. Carrillo* (signature)
*Attorney-at-Law / Pro Se Plaintiff*    Attorney I D # *(if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

Civ 609 (5/2018)

JS 44 Reverse (Rev 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows.

- I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title
  - (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  - (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

- II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below
  United States plaintiff. (1) Jurisdiction based on 28 U S C 1345 and 1348 Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U S C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U S is a party, the U S plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

- III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

- IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

- V. **Origin.** Place an "X" in one of the seven boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U S C., Section 1441 When the petition for removal is granted, check this box.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407
  Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

- VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U S. Civil Statute: 47 USC 553 Brief Description Unauthorized reception of cable service

- VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded

- VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet